# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ALEJANDRO ZAMBRANO,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

No. 14 C 48

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Alejandro Zambrano filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

2d 973, 977 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

On April 13, 2011, Plaintiff applied for DIB alleging he became disabled on November 23, 2010 due to decompression posterior spinal fusion, high blood pressure, and low potassium. (R. at 86). The application was denied initially on July 1, 2011 and on reconsideration on October 4, 2011. (*Id*. at 93, 103). On October 25, 2011, Plaintiff filed a timely request for a hearing. (*Id*. at 121). On July 6, 2012, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id*. at 38-66). The ALJ also heard testimony from LeAnn Bloom, a vocational expert (VE). (*Id*.).

The ALJ denied Plaintiff's request for benefits on July 27, 2012. (R. at 24-33). Applying the five-step sequential evaluation process, the ALJ found, at step one, the Plaintiff had not engaged in substantial gainful activity since November 23, 2010, the alleged onset date. (*Id*. at 26). At step two, the ALJ found that Plaintiff's status-post spinal fusion surgery with continued difficulties and his obesity are severe impairments. (*Id*. at 26). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id*. at 27-28). The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that he could perform light work as defined in 20 CFR 404.1567(b)[3] except that he should:

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675-76.
[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or

lift no more than twenty pounds occasionally and fifteen pounds frequently. He could rarely, meaning no more than 3% of the workday bend, kneel, twist, squat, climb, or perform overhead work. He must be permitted to use a cane when standing or walking, and should be allowed to change his position from sitting to standing every twenty to thirty minutes but would be able to maintain concentration when changing positions. He should be further limited to only brief and superficial contact with other coworkers, supervisors, or the public because of irritability caused by pain.

(*Id.* at 28).

Based on Plaintiff's RFC, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 31). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the regional economy that Plaintiff can perform, including work as an assembler, an inspector, and a hand packager. (*Id.* at 31-32). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 33).

The Appeals Council denied Plaintiff's request for review on November 7, 2013. (R. at 1). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561-62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of

---

carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a

'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

In April 2010, Plaintiff suffered a work-related injury which caused severe back pain. (R. at 463). On May 14, 2010, Plaintiff sought treatment for his back pain from Richard Lim, M.D., an orthopedic surgeon. (*Id.* at 463). Plaintiff's back pain radiated down the bilateral thighs up to the lateral border. (*Id.*). Dr. Lim recommended physical therapy and ibuprofen. (*Id.* at 462-3). On June 4, 2010, Plaintiff returned for a follow-up, reporting that he was not improving. (*Id.* at 462). Dr. Lim recommended an MRI and proscribed Vicodin for the pain. (*Id.* at 462). On June 16, 2010, Dr. Lim reviewed Plaintiff's MRI and found an L5-S1 annular tear causing nerve root impingement on the left side. Plaintiff did not want to proceed with surgery, and Dr. Lim recommended an epidural injection. (*Id.* at 461). Plaintiff was given an epidural shot on June 28, 2010 and reported no significant change in pain. (*Id.* at 460). A provocative discogram revealed low back pain at L4-5 and no pain at L3-4 and L5-S1. (*Id.* at 459). Plaintiff had two more epidural injections and a radio frequency ablation during September and October 2010. (*Id.* at 456-58). The second epidural injection relieved his pain for a few days, but the pain returned. (*Id.* at 456). On November 23, 2010, Plaintiff was still having severe back pain that began at 7 out of 10 severity and worsened throughout the day. (*Id.* at 454). Due to

the failure of the epidural injections to alleviate pain, Dr. Lim recommended surgical intervention. (R. at 454). Surgery was delayed twice due to Plaintiff's elevated blood pressure. (*Id.* at 586). On January 6, 2011, Plaintiff underwent spinal fusion surgery on his L4-5 vertebrae. (*Id.*). On February 15, 2011, Plaintiff reported that his pain had improved since surgery, and that it waxed and waned between 3/10 and 6/10 severity. (*Id.* at 372). Dr. Lim told him to restart physical therapy. (*Id.* at 372). Plaintiff began physical therapy and reported on March 2, 2011, that his back pain had returned. (*Id.* at 371). His X-ray showed no problems with the surgery; instead, his fusion was robust and solid. (*Id.* at 371).

On July 27, 2011, Dr. Lim noted that Plaintiff was not making progress in his recovery, and he had plateaued in his physical therapy. (R at 436). Dr. Lim ordered a functional capacity evaluation. (*Id.* at 436). A functional capacity examination was performed on August 9, 2011, and concluded that Plaintiff could at minimum perform light physical work, despite not putting forth maximal effort. (*Id.* at 503). The functional capacity evaluation also concluded that Plaintiff could occasionally kneel, crouch, crawl, squat and reach overhead. (*Id.* at 504). On August 19, 2011, in a work status report, Dr. Lim cleared Plaintiff for work with restrictions: must allow use of cane; no standing or sitting for more than 20-30 minutes at a time; and no kneeling, twisting, squatting, climbing or doing overhead work. (*Id.* at 533).

Plaintiff sought additional treatment from Daniel Laich, M.D., a doctor with the Chicago Back Institute, and Udit Patel, M.D., a pain management specialist. (R. at 537, 542). On October 14, 2011, Dr. Patel reported Plaintiff was experiencing pain

from 5.5/10 to 7/10 in his back. (*Id*. at 547). On November 8, 2011, Dr. Patel conducted a work status evaluation and did not note any problems standing, walking, sitting, bending, lifting, crawling, kneeling or lifting overhead for the Plaintiff. (*Id*. at 541). On December 2, 2011, Dr. Laich conducted a motor examination of Plaintiff's back muscles and found that Plaintiff had 5/5 control of his muscles. (R. at 538).

On June 29, 2011, Lenore Gonzalez, M.D., a DDS consulting physician, assessed Plaintiff at a light work capability and noted he could occasionally climb ramps/stairs/ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl. (*Id*. at 86-92). On reconsideration, Julio Pardo, M.D., affirmed. (*Id*. at 99-100).

At his hearing on July 26, 2012, Plaintiff testified that he could only lift 10 pounds and that he struggled to lift a gallon of milk, and his medications made him drowsy. (*Id*. at 50-51). Plaintiff also stated that he drives minimally "hardly nothing, just a couple of blocks away when my kids go to school" and that he attends Sunday Mass, but has difficulty sitting down too long and kneeling, and would "rather just stand." (*Id*. at 47-48).

## V. DISCUSSION

### A. The ALJ Improperly Assessed Plaintiff's RFC

Plaintiff argues that the ALJ improperly assessed his RFC by: (1) rejecting the opinion of his treating physician, Dr. Lim, regarding postural movements; (2) not explaining adequately why Plaintiff would not suffer lapses in concentration while changing positions; and (3) failing to consider Plaintiff's obesity when assessing his

functional limitations. (Mot. at 11).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young,* 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96–8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008). The ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano,* 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96–8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Plaintiff contends that the ALJ improperly rejected the medical opinion of Plaintiff's treating physician, Dr. Lim, regarding his postural limitations. The ALJ determined that Plaintiff was limited to light work, except that "[h]e could rarely, meaning no more than 3% of the workday bend, kneel, twist, squat, climb, or

perform overhead work." (R. at 28). In making this assessment, the ALJ rejected both the opinions of Plaintiff's treating physician, Dr. Lim, who opined that Plaintiff could not perform these postural maneuvers whatsoever (R. at 533), and the opinions of the non-examining State agency physicians, who opined that Plaintiff could perform these postural maneuvers on an occasional basis. (R. at 90, 100). Plaintiff argues that, in making this assessment, the ALJ improperly disregarded the medical evidence and reached an independent medical conclusion as to Plaintiff's postural limitations. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). The Court agrees.

There is no medical evidence to support the 3% postural limitations and the basis for the ALJ's determination is entirely unclear. "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870; *see Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Suide v. Astrue*, 371 F. Appx. 684, 690 (7th Cir. 2010) (ALJ's rejection of all the medical opinions of record left an "evidentiary deficit" that he could not reasonably fill with his lay medical opinion."). Here, the ALJ inappropriately determined an RFC without a basis in the record.

Moreover, the ALJ provides no "good reasons" for rejecting the opinion of Plaintiff's treating physician, who opined that Plaintiff could not perform any postural movement. The opinion of a treating source is entitled to controlling weight

if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). If the treating physician's opinion "is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it." *Bauer*, 532 F.3d at 608 (citation omitted). "Thus, to the extent a treating physician's opinion is consistent with the relevant treatment notes and the claimant's testimony, it should form the basis for the ALJ's determination." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) (citation omitted). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)) (other citation omitted).

In a 2011 Work Status Form, Dr. Lim restricted Plaintiff from bending, kneeling, twisting, squatting, climbing or doing overhead work. (*Id*. at 533). The

ALJ gave "more weight" to the opinion of Dr. Lim than that of the state agency consultants because of his "longitudinal treating relationship with the claimant," (R. at 30), yet rejected Dr. Lim's opinion that Plaintiff should not perform any postural movements as not "fully consistent with the record." (*Id*. at 30). In rejecting Dr. Lim's opinion, the ALJ relied on evidence of Plaintiff's daily household activities to contradict Dr. Lim's finding:

> Yet, it is worth noting that I do not find that Dr. [Lim's] opined limitation to never, bend, kneel, twist, squat, climb, or perform overhead work to be fully consistent with the record. In fact, I note that the claimant testified that he is still able to do things such as drive his children to school and attend Sunday mass, and I find that the efforts required by the claimant to do both activities require postural movements, such as bending to get in and out of a seated position, which demonstrate greater abilities than opined by Dr. [Lim].

(*Id*. at 30).

Plaintiff' correctly notes that the ALJ's reliance on Plaintiff's daily household activities to contradict Dr. Lim's opinion is misplaced. First, Plaintiff's testimony of his daily household activities is not opinion evidence that can be used to contradict a treating physician's opinion. *See* 20 C.F.R. § 404.1527 ("evaluating opinion evidence"). The opinion of a treating source is entitled to controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011). The ALJ fails to point to any other medical evidence to contradict Dr. Lim's opinion. Further, the Court does not find Plaintiff's testimony of his daily activities to be inconsistent with Dr. Lim's opinion. While the ALJ asserts that Plaintiff's daily household activities contradict Dr. Lim's finding,

specifically because bending requires the ability to "get in and out of a seated position" (*Id.* at 30), the ALJ ignored the fact that Plaintiff struggles with these activities and is limited in performing these activities. In a function report, Plaintiff stated he needs "assistance getting in and out of the car." (*Id.* at 243). With regard to Sunday Mass, Plaintiff testified that he has difficulty sitting down too long and kneeling, and would "rather just stand." (*Id.* at 47-48). Moreover, it is unclear how the ALJ concluded that these activities equated to Plaintiff being able to perform all postural movements, including kneeling, twisting, squatting, climbing, and overhead work during 3% of each work day. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d at 721.

The Commissioner argues that the ALJ did, in fact, have a basis in the record to discount Dr. Lim's findings on postural movements, namely, a Functional Capacity Evaluation conducted on August 9, 2011 demonstrating Plaintiff could perform light level work with the ability to frequently sit and occasionally stand, walk, climb, balance, stoop, kneel, twist, crouch, crawl, squat, and reach overhead (R. at 504); a 5/5 result on a motor examination in all extremities and normal muscle tone performed by Dr. Laich (R. at 538, 548); and a 2011 work status report from Dr. Patel without any notations restricting Plaintiff's postural movement. (R. at 541). Despite the Commissioner's assertion, there is no indication in the ALJ's decision that she relied on this evidence in discounting Dr. Lim's opinion on postural movements, and the Commissioner may not rely on evidence or explanations not

used by the ALJ. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) ("But the agency's attorneys may not advance an explanation the agency never made itself and may not attempt to support the decision with evidence the agency apparently did not consider."); *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) (forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced). The Court has no way of knowing whether the ALJ relied on these reports in rejecting Dr. Lim's opinion, and, in fact, after reviewing the 2011 functional capacity evaluation with Plaintiff, Dr. Lim specifically recommended that Plaintiff return to work with restrictions limiting him to no postural movements. The ALJ never refers to the postural movement findings in the FCE report. Thus, the Commissioner may not now rely on this evidence to bolster its argument. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) ("the agency may not bolster the ruling with evidence the ALJ did not rely on"). The ALJ failed to provide "good reasons" for rejecting Dr. Lim's opinion on postural movements, and improperly determined this part of the RFC without a basis in the record. For this reason, the Court remands.

Plaintiff also contends that the ALJ erred in finding that Plaintiff "would be able to maintain concentration when changing positions." (R. at 28; Mot. at 10). Plaintiff contends he had difficulty focusing and concentrating on account of his pain and cites to two places in the record, R. at 16, 243. The first citation is the "Request for Review of Hearing Decision," and thus it was not part of the evidence that the ALJ reviewed. (R. at 16). The only place difficulty with concentration was reported was

in the daily activities section of a function report, where Plaintiff noted "my pain is so severe that [it] does not allow me to focus [on] driving." (R. at 243). This argument is better assessed in terms of Plaintiff's credibility. Plaintiff points to no medical evidence discussing his concentration. The Court rejects this argument.

Finally, Plaintiff argues that the ALJ improperly analyzed his obesity and failed to explain how she considered it in assessing the RFC. (Mot. at 11). Plaintiff asserts that had the ALJ analyzed his obesity she "may have found him incapable of sustaining competitive employment." (*Id.* at 11). Failure to analyze obesity can be harmless error if the plaintiff cannot point to any reason the obesity exacerbates his limitations, and the ALJ relied on medical testimony from doctors who were aware of his obesity. *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("Although the ALJ did not explicitly address [claimaint's] obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight . . . '[claimant] is an overweight female in no distress' . . . she was overweight but 'in no acute distress' . . . the treating physician, who described her as 'chronically obese'"). The *Prochaska* Court further noted that the claimant "fails to point to any other evidence suggesting that her obesity exacerbated her physical impairments. . . [and she failed] to specify how her obesity further impaired her ability to work, and because the record relied upon by the ALJ sufficiently analyzes her obesity, any error on the ALJ's part was harmless." *Id.* (internal quotations omitted). Similarly, Plaintiff does not specify work related limitations that will occur due to his obesity and his treating physician, examining physician, and the DDS physicians noted his

height and weight. (R. at 86, 94, 463, 503). Plaintiff merely speculates that a closer look at his obesity may have made him "incapable of sustaining competitive employment" without articulating what limitations would cause this. The Court finds any error on the part of the ALJ to consider Plaintiff's obesity harmless.

**B. Credibility**

Plaintiff also contends that the ALJ erred in her credibility determination by not adequately considering Plaintiff's testimony regarding his medication side effects, and not considering Plaintiff's multiple and persistent treatments for his pain. On remand, the ALJ shall factor in all relevant medical evidence into her credibility analysis and explain how it affected her credibility finding. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request to reverse the ALJ's decision and remand for additional proceedings [15] is **GRANTED,** and Defendant's Motion for Summary Judgment [19] is **DENIED.** Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: October 26, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge